UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ERIK KAMPA,

   Plaintiff,

 v.
             Case No. 22-cv-1019

H-Q PACK, INC.

   Defendant

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

### INTRODUCTION

  Plaintiff, Erik Kampa, and Defendant, H-Q Pack, Inc. ("Defendant" or "HQ Pack"), jointly move this Court for approval of the Parties' settlement of this lawsuit in accordance with the Confidential Settlement Agreement and General Release ("Agreement") attached to this Joint Motion as Exhibit A. The Agreement provides for a total monetary settlement payment of $3,846.26 ($1,367.26 in alleged unpaid overtime wages and $2,500 in attorneys' fees and costs).[1] The Parties believe that the settlement, specifically the settlement payment and release of any of Plaintiff's claims under the Fair Labor Standards Act ("FLSA"), is fair and reasonable as it fully and adequately satisfies the criteria for such settlements. As such, the Parties respectfully request that the Court enter an order which approves the Agreement as a reasonable compromise of disputed issues.

---

[1] As discussed *infra* the Agreement is a global settlement that also resolved an administrative complaint Plaintiff had filed Wisconsin Department of Workforce Development, Equal Rights Division. For the Court's information, the total global settlement amount is $25,376.26 which includes additional proceeds related to the Equal Rights Division action.

## FACTS AND PROCEDURAL HISTORY

On September 6, 2022, Plaintiff filed his Complaint against HQ Pack, asserting on behalf of himself and all other similarly situated individuals a claim under the FLSA and Wisconsin's Wage Payment and Collection Laws. [ECF 1]. Specifically, Plaintiff alleged that: "Defendant operated an unlawful compensation system that deprived and failed to compensate Plaintiff and all other current and former employees for all hours worked and work performed each workweek, including at an overtime rate of pay for each hour worked in excess of forty (4) hours in a workweek, by misclassifying non-exempt employees in positions such as Manager, Assistant Manager, and/or pother similarly-titled positions as salaried-exempt . . . ." [ECF 1, ¶ 3]. HQ Pack filed an Answer on November 4, 2022. [ECF 8].

On November 28, 2022 Plaintiff field a motion for leave to file Amended Complaint [ECF 11] and Proposed Amended Complaint [ECF 11-1]. Plaintiff moved for leave to amend to remove the collective and class allegations and clarify and identify the remaining factual allegations and causes of action against Defendant. [ECF 11]. On December 1, 2022, the Court granted by Text Order the motion for leave to file Amended Complaint [ECF 13], and Plaintiff filed the Amended Complaint [ECF 14]. On December 13, 2022, HQ Pack filed an Answer to the Amended Complaint. [ECF 15].

On August 24, 2022 Plaintiff also filed an administrative complaint against HQ Pack with the Wisconsin Department of Workforce Development, Equal Rights Division("ERD"), alleging arrest record discrimination in violation of the Wisconsin Fair Employment Act.

On January 20, 2023, the Parties agreed in principle to a global settlement to resolve the ERD case and this this case. As part of the settlement (*see* Exhibit A), the Parties contemplate Plaintiff releasing any claims he may have against Defendant including for any alleged violation

2

of the FLSA, as alleged in the Amended Complaint. Accordingly, the Parties request the Court approve the portion of the Agreement releasing claims under the FLSA.

## ARGUMENT

**I.    THE SETTLEMENT IS FAIR AND NOT A WAIVER OF STATUTORY RIGHTS.**

Because the FLSA bars settlements that "establish sub-minimum wages," the Court will review settlement agreements to determine whether they "represent[] a fair and reasonable resolution of a *bona fide* dispute." *Butz v. Automation Sols. of Am., Inc.*, No. 16-cv-696-jdp, 2017 U.S. Dist. LEXIS 183851, at *2 (W.D. Wis. Nov. 7, 2017) (internal citations omitted). While there is no pending collective action in this case, courts typically require single plaintiffs to obtain court approval of a settlement of a FLSA claim. *See Kostic v. Edin Sabic*, No. 1:20-CV-310-HAB, 2020 U.S. Dist. LEXIS 227541, at *1-2 (N.D. Ind. Dec. 3, 2020). However, the same information needed to obtain approval of a collective action is not required where a single plaintiff has direct control of the litigation, and the interests of other members are not being represented. *See Butz*, 2017 U.S. Dist. LEXIS 183851, at *3. Thus, the Court must determine that the Agreement is not "a mere waiver of statutory rights" but rather a compromise of disputed issues. *Id.* In doing so,

> [a] reviewing court normally approves a settlement where it is based on contentious arm's-length negotiations, which were undertaken in good faith by counsel and where serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.

*Kostic*, 2020 U.S. Dist. LEXIS 227541, at *2 (internal citations omitted).

Plaintiff brought a claim on his behalf and a proposed collective under the FLSA. *See* [ECF 1]. Plaintiff's claim under the FLSA was that: "Defendant operated an unlawful compensation system that deprived and failed to compensate Plaintiff and all other current and former employees for all hours worked and work performed each workweek, including at an

3

overtime rate of pay for each hour worked in excess of forty (4) hours in a workweek, by misclassifying non-exempt employees in positions such as Manager, Assistant Manager, and/or pother similarly-titled positions as salaried-exempt . . . ." [ECF 1, ¶ 3]. In other words, Plaintiff brought a mischaracterization claim, alleging that he and other similarly situated HQ Pack employees should have been classified as hourly employee and were owed unpaid overtime under the FLSA. *See generally* [ECF 1]. The filing of the Amended Complaint removed the collective allegations, and this case only involves the claim that Plaintiff individually was misclassified as a salaried-exempt employee and is due unpaid overtime. *See* [ECF 14].

Under the FLSA, employees must receive an overtime wage for each hour worked in excess of forty hours per week. *Brashier v. Quincy Property, LLC*, No. 3:17-CV-3022, 2018 U.S. Dist. LEXIS 68948, at *1 (C.D. Ill. Apr. 24, 2018); 29 U.S.C. § 207(a)(1). However, exempt from this overtime pay are employees "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). While generally a successful FLSA plaintiff is entitled to time and a half for unpaid overtime, there is an exception in misclassification cases:

> While the FLSA normally entitles a non-exempt employee to an overtime pay rate of one and one-half times his ordinary rate for all hours worked in excess of forty hours per week, an exception to this rule exists in misclassification cases. *See* 29 U.S.C. § 207(a)(1); *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 670-71, 681-83 (7th Cir. 2010). Under *Missel*, if a misclassified employee who is salaried has not otherwise agreed to a specific hourly rate, the employee's regular rate of pay equals the fixed weekly wage divided by the hours actually worked that week, including hours worked in excess of forty hours. 316 U.S. at 580 n.16. Such a misclassified employee is entitled to an overtime premium pay rate of one-half his regular rate, as calculated above, for all hours worked in excess of forty hours per week. *Urnikis-Negro*, 616 F.3d at 681. The employer owes this one-half rate because the employee's salary was intended to compensate the employee for all hours worked each week. *Id.* Whether the employer and employee had a 'clear mutual understanding' or otherwise agreed that the employee's weekly salary was meant to cover all hours worked informs this analysis. *Id.* at 680¬81. This agreement need not be evidenced in writing, but may be inferred from the parties' conduct. *Id.* at 681 n.8.

4

*Rego v. Liberty Mut. Managed Care*, 367 F. Supp. 3d 849, 863 (E.D. Wis. 2019).

As part of its evaluation of this case, HQ Pack ran payroll reports of all hours worked and compensation received by Plaintiff during the course of his employment. During the course of Plaintiff's employment between April 25, 2022 and August 12, 2022, he worked overtime (over 40 hours) during nine weeks for a total of 55.05 hours of overtime. Throughout his employment, Plaintiff had a base salary of $1,000.00 per week. Plaintiff, through his counsel, was provided with this information.

Defendant's counsel articulated to Plaintiff's counsel that it was Defendant's position that Plaintiff's salary was intended to compensate him for all hours worked each week and that the *Missel* doctrine would be applicable in this case. Correspondingly, Defendant's position was that even if Plaintiff was ultimately successful in establishing a violation of the FLSA, his best-case recovery of unpaid overtime would be 55.05 hours at half time based on his weekly salary of $1,000.00 ($688.13). Defendant then doubled that amount to account for the possible award of liquidated damages, *see* 29 U.S.C. § 216(b), and presented a settlement offer of $1,376.26 plus reasonable attorneys' fees to be negotiated by the Parties.

With no FLSA collective action pending, and the relatively limited amount of overtime worked by Plaintiff during his approximate four months of employment, the Parties determined that it was in their best interests to settle the federal case for the amount set forth in the Agreement to avoid the costs and uncertainty of further litigation. This was especially so given that even if *Missel* was found not to apply, Plaintiff's best case scenario recovery would be $4,128.76, plus reasonable attorneys' fees.

Plaintiff's experienced counsel determined that the settlement of this case for $1,376.26 reflected a reasonable compromise of a disputed issue regarding the amount of overtime

compensation owed as this amount accurately compensates Plaintiff for half time for every hour of overtime he worked doubled to account for potential liquidated damages.

The Parties also negotiated a reasonable amount of attorneys' fees based on the actual time expended by Plaintiff's counsel in maintaining this lawsuit.[2] Plaintiff's agreed upon attorneys' fees of $2,500.00 is reasonable based on the relatively early posture of the case and the fact that the Parties had not yet engaged in any discovery. The amount of attorneys' fees reflects arms-length negotiations based on the work performed by Plaintiff's attorneys.

Further, because the settlement amount is intended to account for all unpaid wages allegedly owed to Plaintiff, the Parties' settlement does not "establish sub-minimum wages." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). In sum, the Agreement was based on arm's length negotiations by counsel for the Parties and the Parties believe that the Agreement is fair and reasonable.

## **CONCLUSION**

For the reasons stated above, the Parties respectfully request that the Court enter the contemporaneously filed proposed order, approving the Agreement attached as Exhibit A.

---

[2] The Agreement also includes attorneys' fees and costs that were attributable to the ERD case.

Dated: February 6, 2023

**s/** *Scott S. Luzi*_____
James A. Walcheske, SBN 1065635
Scott S. Luzi, SBN 1067405
David M. Potteiger, SBN 1067009
WALCHESKE & LUZI, LLC
235 North Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Email: jwalcheske@walcheskeluzi.com
Email: sluzi@walcheskeluzi.com
Email: dpotteiger@walcheskeluzi.com

**s/** *Jonathan E. Sacks*_____
Ronald S. Stadler, SBN 1017450
Jonathan E. Sacks, SBN 1103204

KOPAS PINKUS DOLAN PC
N19W24200 Riverwood Dr, Suite 140
Waukesha, Wisconsin 53188
Telephone: (847) 549-9611
E-Mail: rsstadler@kopkalaw.com
E-Mail: jesacks@kopkalaw.com