## Confidential Settlement Agreement and General Release

HQ-Pack, Inc. d/b/a Midas Auto Service Experts and Tires ("Employer" or "HQ-Pack") and Erik Kampa, his heirs, executors, administrators, successors, and assigns (collectively, "Employee") enter into the following Confidential Settlement Agreement and General Release ("Agreement").

1. <u>Recitals</u>.

This Agreement is made with reference to the following facts:

    (a) Employee was formerly employed by Employer;

    (b) Employee's last day of employment with Employer was August 23, 2022.

2. <u>The Complaints</u>.

    A. <u>The FLSA Complaint</u>. On September 6, 2022, Employee filed Case No. 22-cv-1019 in the Federal District Court for the Eastern District of Wisconsin, alleging a violation of the Fair Labor Standards Act ("FLSA") and Wisconsin wage and hour laws, and on November 28, 2022, Employee filed an Amended Complaint (the "FLSA Complaint"). Employer denies any and all unlawful actions and/or liability whatsoever and specifically disclaims any wrongful acts against Employee as alleged in the FLSA Complaint or otherwise.

    B. <u>The ERD Complaint</u>. On August 24, 2022, Employee filed Complaint No. CR202202268 with the Wisconsin Department of Workforce Development, Equal Rights Division ("ERD"), alleging that he was subjected to employment discrimination on the basis of arrest record (the "ERD Complaint"). Employer denies any and all unlawful actions and/or liability whatsoever and specifically disclaims any wrongful acts against Employee as alleged in the ERD Complaint or otherwise.

3. <u>Final Resolution</u>. While there has been no determination on the merits of the FLSA Complaint and the ERD Complaint, Employee and Employer (the "Parties") have reached a compromise resolution, subject to the provisions in Paragraph 6 below, intended to fully, finally, and to the greatest extent allowed by law, resolve any and all claims and/or disputes, known and unknown, asserted and unasserted, that Employee has or may have, arising out of Employee's employment or the end of that employment, including, but not limited to, the claims raised in the FLSA Complaint and the ERD Complaint, in an amicable manner, without the difficulties and expenses involved in further litigation. Employee's obligations under this Agreement include, but are not limited to, dismissing with prejudice the FLSA Complaint and the ERD Complaint and any other pending legal actions against Employer, and filing a joint motion and proposed order approving this settlement of the FLSA Complaint with the Court.

4. <u>Consideration</u>. In consideration for signing this Agreement, including not revoking such consent, and complying with its terms, Employer agrees to pay Employee the gross total amount of Twenty-Five Thousand ThreeHundred and Seventy-Six Dollars and Twenty-Six Cents ($25,376.26) in exchange for the releases, covenants, conditions, and obligations imposed upon Employee by this Agreement (the "Total Settlement Payment"). Employee acknowledges that the Total Settlement Payment is greater than any amounts otherwise due to Employee from Employer. The Total Settlement Payment shall be made as follows:

A. Of the Total Settlement Payment, TwoThousand Five Hundred Dollars and No Cents ($2,500.00) shall be classified as attorneys' fees and costs related to the <u>FLSA Complaint</u> and made payable to Walcheske & Luzi, LLC. Employer will make payment via check and issue appropriate IRS Form(s) 1099 to each of Employee and Employee's Counsel in connection with this payment.

B. Of the Total Settlement Payment, OneThousand ThreeHundred and Seventy-Six Dollars and Twenty-Six Cents ($1,376.26) shall be classified as wages and paid to Employee related to the <u>FLSA Complaint</u>, *less ordinary tax withholding and all required deductions*. Withholding shall be calculated using the last Form W-4 submitted by Employee to Employer. Employer will issue an IRS Form W-2 in connection with this payment.

C. Of the Total Settlement Payment, NineThousand Dollars and No Cents ($9,000.00) shall be classified as attorneys' fees and costs related to the <u>ERD Complaint</u> and made payable to Walcheske & Luzi, LLC. Employer will make payment via check and issue appropriate IRS Form(s) 1099 to each of Employee and Employee's Counsel in connection with this payment.

D. Of the Total Settlement Payment, TwelveThousand FiveHundred Dollars and No Cents ($12,500.00) shall be classified as wages and paid to Employee related to the <u>ERD Complaint</u>, *less ordinary tax withholding and all required deductions*. Withholding shall be calculated using the last Form W-4 submitted by Employee to Employer. Employer will issue an IRS Form W-2 in connection with this payment.

E. The Total Settlement Payment shall not be deemed "compensation" for purposes of any of Employer's qualified retirement plans or other benefit programs, and payment of that consideration does not entitle Employee to any retirement plan contributions by Employer for Employee's benefit or account. Employer makes no representations or advice as to the tax consequences of any payment under this Agreement.

F. The Total Settlement Payment shall be paid on or before the Fourteenth (14th) business day after (i) the expiration of Employee's right to revoke their consent, and (ii) Employer's receipt of all of the following:

1. An original or counterpart of this Agreement signed by Employee.

2. A copy of a filed Stipulation or Joint Motion for Approval of Settlement and Voluntary Dismissal of the FLSA Complaint.

3. An order from the Court approving the settlement related to the FLSA Complaint.

4. A properly-completed Request to Withdraw Complaint form (form ERD-4971) relating to the ERD Complaint.

5. Any other documents reasonably required by Employer from Employee for the purpose of processing the Total Settlement Payment.

5. <u>No Consideration Absent Execution of this Agreement</u>. Employee understands and agrees that Employee would not receive the monies and/or benefits specified in Paragraph 4 above, except for Employee's execution of this Agreement, the expiration of Employee's right to revoke their signature on this Agreement, and the fulfillment of the promises contained herein.

6. <u>General Release, Claims Not Released and Related Provisions</u>.

   A. <u>General Release of All Claims</u>. Employee knowingly and voluntarily releases and forever discharges HQ-Pack, Inc., d/b/a Midas Auto Service Experts and Tires, and Paychex, Inc., including their direct and indirect past, present, and future parent corporations, affiliates, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, co-employers, professional employer organizations, representatives, successors and assigns, and their current and former employees, attorneys, officers, directors, and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs, and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees"; along with HQ-Pack, Inc., and Paychex, Inc., the "Released Parties"), of and from any and all claims, known and unknown, asserted or unasserted, which Employee has or may have against the Released Parties as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964 ("Title VII");
- The Fair Labor Standards Act of 1938 ("FLSA");
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (as modified below);
- The Internal Revenue Code of 1986;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990 ("ADA");
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Rehabilitation Act of 1973;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;

3

- The Emergency Family and Medical Leave Expansion Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Families First Coronavirus Response Act;
- The Emergency Paid Sick Leave Act;
- The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
- The Indiana Age Discrimination Act, I.C. 22-9-2, *et seq.*;
- The Indiana Civil Rights Law, I.C. 22-9-1-1, *et seq.*;
- The Indiana Minimum Wage Law, I.C. 22-2-2-1, *et seq.*, including the Indiana Equal Pay Act;
- The Indiana Employment Discrimination Against Disabled Persons Act, I.C. 22-9-5-1, *et seq.*;
- The Indiana State Wage Payment, Wage Claims, and Work Hours Laws, including I.C. 22-2-4-1, *et seq.*; I.C. 22-2-5-1, *et seq.*; and I.C. 22-2-9-1, *et seq.*;
- The Indiana Possession of Firearms Laws, I.C. 34-28-7, *et seq.,* and I.C. 34-28-8, *et seq.*;
- The Indiana Whistleblower Protection Laws, I.C. 5-1 1-5.5-8 and I.C. 22-5-3-3;
- The Indiana Garnishment Retaliation Law, I.C. 24-4.5-5-106;
- The Indiana Family Military Leave Law, I.C. 22-2-13-1, *et seq.*;
- The Indiana Occupational Safety and Health Act, I.C. 22-8-1.1-1, *et seq.*;
- The Indiana AIDS Testing Laws, I.C. 16-41-6-1 and 16-41-8-1, *et seq.*;
- The Indiana Smoker's Rights Law, I.C. 22-5-4-1, *et seq.*;
- The Wisconsin Fair Employment Act, Wis. Stat. §§ 111.31 *et seq.*;
- The Wisconsin Disability Discrimination Act, Wis. Stat. §§ 111.34 *et seq.*;
- The Wisconsin Family or Medical Leave Act, Wis. Stat. §§ 103.10 *et seq.*;
- The Wisconsin Minimum Wage Act, Wis. Stat. §§ 104.001 *et seq.*;
- The Wisconsin Wage Payments, Claims, and Collections Act, Wis. Stat. §§ 109.01 *et seq.*;
- any other federal, state or local law, rule, regulation, or ordinance
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses, including attorneys' fees, incurred in these matters.

B. <u>Claims Not Released</u>. Employee is not waiving any rights he may have to: (a) Employee's own vested or accrued employee benefits, if any, under Employer's health, welfare, or retirement benefit plans as of Employee's final date of employment; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) if Employer is subject to regulation by the Securities and Exchange Commission, any rights Employee may have to any bounty that may be recoverable as a result of participating in the SEC's Whistleblower Program; (d) pursue claims which by law cannot be waived by signing this Agreement; (e) enforce this Agreement; and/or (f) challenge the validity of this Agreement.

C.  <u>Governmental Agencies</u>. Nothing in this Agreement prohibits, prevents, or otherwise limits Employee from filing a charge with, or participating, testifying, or assisting in any investigation, hearing, or other proceeding before, any federal, state, or local government agency, such as the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, or the U.S. Securities and Exchange Commission, or a similar agency enforcing federal, state, or local anti-discrimination laws, to the extent that such right to file is not subject to waiver. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made to such an anti-discrimination agency, Employee shall not be entitled to recover any individual monetary relief or other individual remedies. In the event that Employee files a charge or complaint with the Wisconsin Department of Workforce Development, Equal Rights Division, Employee acknowledges and agrees that such charge or complaint shall be dismissed prior to the completion of an investigation, pursuant to Wis. Admin. Code § DWD 218.06(3)2. In addition, nothing in this Agreement, including, but not limited to, the release of claims nor any confidentiality or non-disparagement clauses, prohibits Employee from: (1) reporting possible violations of federal law or regulations, including any possible securities laws violations, to any governmental agency or entity, including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Congress, or any agency Inspector General; (2) making any other disclosures that are protected under the whistleblower provisions of federal law or regulations; or (3) otherwise fully participating in any federal whistleblower programs, including, but not limited to, any such programs managed by the U.S. Securities and Exchange Commission and/or the Occupational Safety and Health Administration. Moreover, nothing in this Agreement prohibits or prevents Employee from receiving individual monetary awards or other individual relief by virtue of participating in such federal whistleblower programs.

D.  <u>Collective/Class Action Waiver</u>. If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective, or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party. Similarly, as to any such claim against any Releasee that is not otherwise released, Employee waives Employee's right to a jury trial, subject to applicable law.

7.  <u>Acknowledgments and Affirmations</u>.

A.  Employee affirms that Employee has not filed, caused to be filed, nor presently is a party to any claim against Employer other than the FLSA Complaint, the ERD Complaint, or a claim for unemployment compensation. Nothing in this Agreement or these Affirmations is intended to impair Employee's rights under whistleblower laws or cause Employee to disclose Employee's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

B.  Employee also affirms that Employee has reported all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation,

5

wages, bonuses, commissions, and/or benefits which are due and payable as of the date Employee signs this Agreement, and Employee has been reimbursed for all necessary expenses or losses incurred by Employee within the scope of Employee's employment. Employee further affirms that Employee has submitted expense reports for all necessary expenses or losses incurred by Employee within the scope of Employee's employment.

      C.      Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act, or related state or local leave or disability accommodation laws.

      D.      Employee further affirms that Employee has no known workplace injuries or occupational diseases.

      E.      Employee represents and warrants that he is not enrolled in Medicare or a Medicare Advantage Plan or Medicaid, is not a recipient of benefits from Medicare or a Medicare Advantage Plan or Medicaid, and is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end-stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Notwithstanding the foregoing, Employee warrants and represents that it is solely his obligation to satisfy any and all liens and/or subrogation interests of any kind, including, but not limited to, any past and/or future liens, and including, but not limited to, any lien of or relating to legal services, healthcare services, held by Medicare, and/or Medicare Advantage and/or Medicaid against the amount paid to him under this Agreement. Employee shall fully indemnify, defend, exonerate, and hold harmless Released Parties from and against any claim by any subrogated interest and/or lienholder arising from the settlement and/or from payment by or on behalf of Released Parties, individually and/or collectively, including, but not limited to, the costs of any litigation and/or attorneys' fees. Employee shall further reasonably cooperate with the Released Parties upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Employee is required to indemnify the Released Parties under this paragraph, and hereby waives any and all future actions against Released Parties for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A). In reaching this settlement, the Parties acknowledge that they have attempted to resolve all matters between them in compliance with both state and federal law, and they believe that the settlement terms have adequately considered any actual and/or potential interest Medicare, Medicaid, Medicare Advantage Plan and/or any third party has or may have. In no event do the settlement terms reflect any attempt to shift responsibility for payment of medical expenses to Medicare, Medicaid or Medicare Advantage.

      F.      Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law. Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either

directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

       G.     Employee affirms that Employee has returned all of Employer's property, documents, and/or information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at Employer's premises and that Employer is not in possession of any of Employee's property.

       H.     Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer, its officers, managers, supervisors, or agents, including any allegations of corporate fraud.

       I.     Employee affirms that all of Employer's decisions regarding Employee's pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin, or any other classification protected by law.

      8.     <u>Tax Indemnification</u>. Employee agrees to indemnify and hold the Released Parties harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Released Parties in connection with such governmental authority's determination that Employer or any of the other Released Parties was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made pursuant to Paragraph 4 of this Settlement Agreement. Employee agrees that Employee shall indemnify the Released Parties for the full amount of such liability within thirty days after receipt of notice from Employer or any of the other Released Parties of the assessment of such taxes, penalties, or interest. Employee further agrees to notify Employer promptly and reasonably cooperate with Employer in the defense of any claim or issue raised by any governmental authority with respect to the payments made under Paragraph 4 above.

      9.     <u>Confidentiality</u>. Employee agrees not to discuss, reveal, or otherwise disclose the terms and conditions of this Agreement, the payment or receipt of money pursuant to this Agreement, or the negotiations leading to this Agreement ("Confidential Information"), except that he may disclose Confidential Information to Employee's spouse, attorneys, accountants, or financial advisors, provided that they are informed of this confidentiality provision and agree to comply with its terms. Employee agrees that in the event that Employee discloses the terms of this Agreement to Employee's spouse, attorneys, accountants, or financial advisors, Employee will instruct Employee's spouse, attorneys, accountants, or financial advisors not to reveal, disseminate by publication of any sort, or release in any manner or means this Agreement (except as may be required by legal process) to any other person or to any member(s) of the public, or to any newspaper, magazine, radio station, or television station, or to any future, current, or former employee, representative, agent, customer, creditor, or competitor of Releasees, without the

7

express written consent of Releasees. Should any spouse, attorneys, accountants, or financial advisors not comply with the terms of this confidentiality provision, it will be as if Employee has breached the provision, and Employee will be held liable for any such breach. Employee may also disclose Confidential Information to government taxing authorities. Employee may also disclose Confidential Information if required to do so by a lawful, binding subpoena, court order, or other valid legal process, after written notice to Employer of such disclosure. Employer reserves the right to defend from and against such disclosure at its discretion and cost. If inquiries arise concerning this Agreement, Employee may only reply that "The matter has been resolved to everyone's satisfaction; there was no victory on either side," and shall make no other comment, except as required by law. Nothing in this Agreement has the purpose or effect of preventing Employee from making truthful disclosures about alleged unlawful conduct.

10. <u>No Future Relationship.</u> Employee acknowledges that he has no right to any future employment with Employer, its successors, or assigns. Employee covenants not to apply for or seek employment with Employer, its related entities, successors, or assigns. Any applications for future employment submitted by Employee will be denied based solely on the terms of this Agreement, and no other reason(s) shall be attributed for such denial. The Parties agree that this Paragraph is a negotiated, non-discriminatory, and non-retaliatory term of this Agreement.

11. <u>Non-Disparagement</u>. Employee agrees that he will not defame or disparage Employer, or make statements that are disparaging, demeaning, or defamatory about its supervisors or managers, its Released Parties or its customers, supplies, or vendors, including, but not limited to, communications on social media websites such as Facebook, Twitter, LinkedIn, or Glassdoor; on blogs; or by text, email, or other electronic means. For purposes of this paragraph, "disparage" shall mean making any negative written or verbal statement that could reasonably be expected to negatively affect the personal or professional reputation of an individual or entity. This provision does not prohibit Employee from making truthful statements about the terms or conditions of Employee's employment, or from exercising Employee's rights under the National Labor Relations Act, government whistleblower programs, or whistleblowing statutes or regulations.

12. <u>Successors</u>. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, Employee, Employer, and their respective heirs, beneficiaries, insurers, administrators, representatives, executors, successors and assignees. All Releasees are third-party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Employee or any party acting on Employee's behalf.

13. <u>Governing Law and Interpretation</u>. This Agreement shall be governed and conformed in accordance with the laws of the State of Wisconsin, without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the

general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. This Agreement is the product of joint drafting and negotiation between the Parties. Accordingly, the Parties agree that any principle of construction or rule of law that provides that, in the event of any inconsistency or ambiguity, an agreement shall be construed against the drafter of the agreement shall have no application to the terms and conditions of this Agreement.

14. <u>Non-admission of Wrongdoing</u>. The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by the Released Parties of wrongdoing or evidence of any liability or unlawful conduct of any kind.

15. <u>Amendment</u>. This Agreement may not be modified, altered, or changed except in a writing that is hand-signed by both Parties, wherein specific reference is made to this Agreement.

16. <u>Miscellaneous.</u> This Agreement may be executed in counterparts, which may be exchanged by mail, courier, facsimile, email, or other electronic form of transmission. When each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement.

17. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

18. <u>Headings Descriptive Only.</u> Descriptive headings are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEE IS ALSO ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT.**

**EMPLOYEE MAY REVOKE THIS AGREEMENT AS TO AGE DISCRIMINATION CLAIMS ONLY FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY ON WHICH EMPLOYEE SIGNS OR ENTERS INTO THIS AGREEMENT. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO HQ-PACK, INC., C/O GEORGE PANAYIDES, 125 N. WEINBACH AVE., EVANSVILLE, IN 47701, *GEORGE.PANAYIDES@GMAIL.COM*, AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF THE PORTION OF THE AGREEMENT AND GENERAL RELEASE THAT RELATES TO ANY POTENTIAL AGE DISCRIMINATION CLAIMS." THE REVOCATION MUST BE RECEIVED BYGEORGE PANAYIDES, 125 N. WEINBACH AVE., EVANSVILLE, IN 47701,**

**GEORGE.PANAYIDES@GMAIL.COM, , OR HIS DESIGNEE, WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT. EMPLOYEE UNDERSTANDS AND AGREES THAT 50% OF THE AMOUNT RECEIVED AS CONSIDERATION FOR SETTLEMENT OF THE ERD COMPLAINT AS SET FORTH ABOVE IS DEDICATED TO EMPLOYEE'S AGE DISCRIMINATION WAIVER, AND EMPLOYEE IS NOT ENTITLED TO THE FULL AMOUNT OF THE ERD COMPLAINT SETTLEMENT IF EMPLOYEE REVOKES THIS AGREEMENT AS TO AGE DISCRIMINATION CLAIMS. IN THE EVENT THAT EMPLOYEE REVOKES THIS AGREEMENT AS IT PERTAINS TO AGE DISCRIMINATION CLAIMS, EMPLOYEE AGREES THAT, IN LIEU OF THE TOTAL PAYMENT AMOUNT SET FORTH ABOVE FOR SETTLEMENT OF THE ERD COMPLAINT, EMPLOYEE SHALL FORFEIT 50% OF THAT AMOUNT, AND EMPLOYEE WILL RECEIVE ONLY 50% OF THE AMOUNT SET FORTH ABOVE FOR SETTLEMENT OF THE ERD COMPLAINT. EMPLOYEE FURTHER UNDERSTANDS AND AGREES THAT EMPLOYEE'S REVOCATION OF THIS AGREEMENT AS IT PERTAINS TO CLAIMS OF AGE DISCRIMINATION SHALL HAVE NO EFFECT ON THE VALIDITY AND ENFORCEABILITY OF ANY OTHER TERM, CONDITION, OR PROVISION OF THIS AGREEMENT, INCLUDING THE RELEASE OF ALL CLAIMS NOT ARISING UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT, WHICH TERMS BECOME EFFECTIVE WHEN THIS AGREEMENT IS ENTERED INTO OR SIGNED BY EMPLOYEE.**

**EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST THE RELEASED PARTIES.**

[*Signatures on following page*]

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**ERIK KAMPA**                                            **HQ-PACK, INC.**

_____                           _____
Signature                                                  Signature

Erik Kampa
_____                           _____
Print Name                                                 Print Name

                                                          _____
                                                          Title

2.3.23
_____                           _____
Date                                                       Date

11

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

ERIK KAMPA                                    HQ-PACK, INC.

_____                      _____
Signature                                     Signature

Erik Kampa                                    George Panayides
_____                      _____
Print Name                                    Print Name

                                              C.F.O.
                                              _____
                                              Title

2.3.23                                        2/6/2023
_____                      _____
Date                                          Date

11